## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| W.T., ) | |
| ) | |
| Plaintiff, ) | Case No. 5:24-cv-00387-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| FRANK BISIGNANO[1], *Commissioner of* ) | **&** |
| *Social Security*, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff seeks judicial review of an administrative decision denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff W.T. brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.[2] The Court, having reviewed the record and for the reasons set forth herein, will **DENY** W.T.'s Motion for Summary Judgement [R. 8.] and **GRANT** the Commissioner's [R. 10.]

**I**

Plaintiff W.T. filed his first application for social security benefits on November 30, 2019, alleging an October 21, 2019 disability onset date. [R. 8-1 at 1.] On April 9, 2021, Administrative Law Judge Davida Isaacs denied W.T.'s first application. *Id.* On May 29, 2022,

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano should be substituted as the Defendant in this action. No further action is needed to continue this suit pursuant to Section 205(g) of the Social Security Act which reads "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." 42 U.S.C. § 405(g).
[2] The claimant's initials are used in lieu of his name to protect his sensitive medical information contained throughout this Memorandum Opinion and Order.

W.T. filed his current application for benefits, alleging an April 7, 2021 disability onset date. *Id.* His claim was denied initially on August 23, 2022, and upon reconsideration on December 8, 2022. [R. 5 at 21.] W.T. then submitted a written request for a hearing, and on August 8, 2023, ALJ Lyle Eastham conducted a hearing. *Id.* ALJ Eastham issued his decision on September 29, 2023, denying W.T.'s application for benefits. *Id.* W.T. then requested review of ALJ Eastham's decision with the Appeals Council. [R. 8-1 at 2.] The Appeals Council denied W.T.'s request for review on October 29, 2024. *Id.* W.T. then filed a Complaint with this Court seeking judicial review under 42 U.S.C. § 405(g). [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 8; R. 10.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. 20 C.F.R. § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, he is not disabled. 20 C.F.R. § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses his ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, the ALJ uses a claimant's RFC

to determine whether he is still able to do his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, he is not disabled. *Id*.

Finally, at step five, if the ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

## A

ALJ Eastham completed the requisite five-step analysis to determine W.T.'s disability status. [R. 5 at 21-32.] He first determined that W.T. has not engaged in substantial gainful activity since April 7, 2021, which is the alleged onset point of the period in which he claims to be disabled. *Id.* at 23. Next, the ALJ found that W.T. suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine, thoracic spine, and cervical spine, status post cervical spine surgery in 2019, (2) peripheral neuropathy, (3) obesity, (4) De Quervain tenosynovitis of the right wrist, (5) median neuropathy of the left wrist and ulnar neuropathy of the left elbow, and (6) anxiety. *Id.* at 24. But at step three, the ALJ found that none of these impairments, nor any combination of them "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. . ." *Id.*

Before proceeding to step four, the ALJ fashioned W.T.'s RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can use the bilateral upper extremities to finger, reach, handle, and feel frequently, but only occasional overhead reaching; frequent balancing as defined by the Selected Characteristics of Occupations; frequent stooping; occasional crouching; should never kneel or crawl; never climb ladders, ropes, or scaffolds; never climb stairs; occasionally climb ramps; occasional exposure to vibrations and extreme cold temperatures; can never work at unprotected heights or with dangerous machinery, including never operating motor vehicles as a work requirement; no fast paced production rate work, such as seen with an hourly quota system or a conveyor belt paced rate; needs a sit and stand option with alternating positions every 20 to 30 minutes at the workstation; requires a cane to ambulate to and from the workstation; and the claimant is limited to performing simple tasks.

*Id.* at 26. Next, the ALJ proceeded to step four, concluding that W.T. is unable to perform any past relevant work. *Id.* at 31. In reaching this conclusion, the ALJ specifically addressed whether W.T. could perform work as a traveling insurance salesperson or an office loan manager, concluding that he could not. *Id.* The ALJ found that W.T. would not be able to work as a traveling salesperson because that work requires light exertional work activity, and W.T. is limited to sedentary exertional work activity. *Id.* Additionally, W.T. could not work as an office loan manager because W.T. is limited to performing simple tasks. *Id.* Thus, the ALJ concluded that W.T. is unable to perform past relevant work "as actually or generally performed." *Id.*

Proceeding finally to step five, the ALJ heard from a vocational expert and determined that, considering W.T.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that W.T. can perform. *Id.* These jobs include: (1) new account interviewer, of which there are approximately 188,000 jobs in the national economy, (2) information clerk, of which there are approximately 1,000,000 jobs in the national

4

economy, and (3) call out operator, of which there are approximately 24,000 jobs in the national economy. *Id.* at 32. Consequently, the ALJ found that W.T. had not been under a disability, as defined in the Social Security Act, from April 7, 2021, through the date of his decision. *Id.* at 32. The Appeals Council declined to review the case on October 24, 2024. [R. 1.] W.T. now seeks judicial review in this Court.

**B**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

W.T. contends that ALJ Eastham committed "several errors" in his decision. [R. 8-1 at 3.] W.T. contends that the ALJ erred by relying too heavily on W.T. having normal strength after recovering from surgery but ignoring other portions of his treating surgeon's opinion. *Id.* at 3. W.T. alludes to this argument in the introduction section of his brief, and makes no attempt to develop this argument any further, so the Court simply notes that examining conflicting evidence, weighing its probative value, and reaching a conclusion is precisely the role of the ALJ. *Sallaz v. Comm'r of Soc. Sec.*, 2024 WL 2955645, at *7 (6th Cir. June 12, 2024) ("weighing conflicting evidence [is] properly within the ALJ's role"); *see also Morgan v. Bisignano*, 2025 WL 3047876, at *4 (E.D. Ky. Oct. 31, 2025) ("[d]etermining functional limitations from the record is precisely an ALJ's function…") (citations omitted). Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

W.T. also takes issue with the fact that ALJ Isaacs, when issuing the decision on W.T.'s first claim, assigned W.T. an RFC for light work, which included limitations for "no more than frequent flexion/rotation of the neck" and "[h]e could use his nondominant [left] hand no more than occasionally to handle/finger." [R. 8-1 at 2.] When ALJ Eastham heard W.T.'s instant claim, he reduced W.T's RFC from light work to simple sedentary work but assigned a less restrictive RFC on W.T.'s use of his non-dominant hand (from occasional to frequent) and identified no limitation in W.T's ability to flex or rotate his neck. *Id.* W.T. contends that ALJ

6

Eastham erred by leaving out the previous restrictions and providing no explanation for doing so. *Id.* at 3.

Other than alluding to the fact that ALJ Eastham should have provided an explanation for his departure from ALJ Isaacs' findings, W.T. makes no further effort to develop this argument or otherwise explain how this affected ALJ Eastham's ultimate determination. *Id.* In any event, ALJ Eastham was not bound by ALJ Isaacs' findings. As the Commissioner notes, ALJ Isaacs' findings were based on W.T.'s alleged disability from October 31, 2019, to April 6, 2021, while ALJ Eastham based his decision on W.T.'s alleged disability from April 7, 2021, to September 29, 2023. [R. 10 at 4.] And when an ALJ is confronted with a new application covering a new time period, he is required to give that application a "fresh look." *Goins v. Saul*, No. 5:19-cv-117-DLB, 2020 WL 1290784, at *5 (E.D. Ky. Mar. 18, 2020). Thus, ALJ Eastham was not required to adopt limitations from the previous decision of ALJ Isaacs, nor explain why he departed because ALJ Eastham was confronted with a new period of alleged disability, and therefore, a different alleged disability altogether.

Finally, W.T. contends that the ALJ erred by accepting the vocational expert's opinion regarding the number of jobs in the national economy which W.T. can perform. [R. 8-1 at 14.] At the hearing, the ALJ described W.T.'s limitations in a hypothetical manner to vocational expert, Joyce Forest, and then asked Ms. Forest to opine on the number of jobs available nationally for someone with these hypothetical limitations. [R. 5 at 61-62.] In this first hypothetical, the ALJ specifically imposed the restriction of "a 20-to-30-minute sit/stand option alternating every 20-to-30 minutes at the workstation." *Id.* at 61. Ms. Forest replied with three examples of simple, sedentary jobs that met the hypothetical restrictions: new account

7

interviewer, information clerk, and callout operator—with 188,600, 1,000,000, and 27,000 of those jobs existing in the national economy, respectively. *Id.* at 62.

The ALJ then asked Ms. Forest whether it would be work preclusive (i.e. no existing jobs in the national economy) if the frequency of the sit/stand option were increased to 10-to-15 minutes. *Id.* Ms. Forest replied that it would, or in other words, that there would be no existing jobs which accommodate that limitation. *Id.* On cross examination, when asked if the sit/stand option were strictly 20 minutes—rather than every 20-to-30 minutes—how that would affect the jobs she identified, Ms. Forest opined that a 20-minute sit/stand option would reduce the existing number of jobs by 50%. *Id.* at 63. Ms. Forest was then asked to identify the exact point at which a sit/stand option becomes work-preclusive, to which the ALJ interjected that, based on Ms. Forest's previous answers, alternating positions every fifteen minutes was work preclusive and every twenty minutes was not. *Id.* The ALJ then opined that the point at which the limitation becomes work preclusive necessarily must be somewhere between 15 and 20 minutes. *Id.* Ms. Forest agreed with the ALJ, noting that the numbers were not an exact mathematical formula, but rather "it just—it is what it is." *Id.*

W.T. contends that the ALJ should not have accepted Ms. Forest's estimates because she did not adequately explain the basis for the numbers she provided. [R. 8-1 at 14-15.] Specifically, W.T. avers that the Dictionary of Occupational Titles (DOT) does not address whether a sit/stand option is available for the jobs identified by the vocational expert, creating an inconsistency. *Id.* W.T. further claims that as a result of this inconsistency, the ALJ is under an affirmative duty to "elicit a reasonable explanation for the conflict" before relying on the vocational expert, which W.T. contends the ALJ did not do in this instance. *Id.*

Here, consistent with the SSR 00-4p, the ALJ did ask Ms. Forest whether her testimony was consistent with the information found in the DOT and, if not, what she relied upon for her testimony. [R. 5 at 62.] Ms. Forest replied that the DOT does not always address the sit/stand option, so for that she based her answers on her "education, work experience, and research." *Id.* at 62-63. W.T. claims that because Ms. Forest did not explain *how* she used her education, work experience, and research, the ALJ did not properly rely on her opinion. *Id.* at 14.

Notably, W.T. does not contend, nor could he, that the ALJ did not satisfy his "affirmative duty" to ask the vocational expert if the evidence she provided conflicted with the DOT. [R. 8-1 at 14.] "All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.*, 799 Fed. Appx. 313, 317 (6th Cir. 2020). W.T. only takes issue with the ALJ's decision to credit the opinion of the vocational expert, essentially arguing that ALJ Eastham did not obtain a "reasonable explanation" for any conflict. *Id.*

The Sixth Circuit has, on multiple occasions, upheld an ALJ's decision to credit a vocational expert's opinion when the vocational expert's opinion was inconsistent with the DOT. *See e.g. Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) ("The ALJ may accept testimony of a vocational expert that is different from information in the Dictionary of Occupational Titles."); *see also Basinger v. Sec'y of Health and Human Servs.,* 33 F.3d 54 (6th Cir. 1994) (Table) (same). In explaining his decision to credit the vocational expert's opinion, ALJ Eastham explained that Ms. Forest's opinion was based on "years of specific job analysis of various occupations" and "her experience functioning as a vocational rehabilitation worker and matching disabled workers with vocations." [R. 5 at 32.]

9

Here, the Court finds that substantial evidence supports ALJ Eastham's reliance on the opinion of Ms. Forest, particularly in light of her vast experience in the field, dating back over 50 years prior to the hearing. [R. 5 at 287.]; *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022) ("[T]he vocational expert's testimony at [the] claimant's] hearing amounts to substantial evidence supporting the ALJ's decision.")  SSR 00-4p specifically contemplates that a vocational expert's "experience in job placement or career counseling" may serve as a "reasonable explanation" for an inconsistency between the DOT and the vocational expert's opinion. *See* Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  As such, substantial evidence supports ALJ Eastham's conclusion that jobs that exist in significant numbers in the national economy that W.T. can perform.

### III

Thus, after reviewing the record, the Court finds that substantial evidence supports the ALJ's decision finding that W.T. is not disabled, as defined by the Social Security Act.  Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion.  *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff W.T.'s Motion for Summary Judgment **[R. 11]** is **DENIED**;

2. The Commissioner's Motion for Summary Judgment **[R. 10]** is **GRANTED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 24th day of February, 2026.

                                              Gregory F. Van Tatenhove
                                              United States District Judge